Grace vs. Dempsey and others.

GRACE, Respondent, vs. DEMPSEY and others, Appellants.

*November 14 — December 3, 1889.*

*(1-4) False imprisonment: Provocation: Justification: Mitigation of damages: Evidence. (5) Exclusion of juror: Discretion. (6) Instructions to jury: Modification.*

1. In an action for false imprisonment, controversies between the parties more than two years previous thereto cannot be shown as a defense or in mitigation of damages, and allegations in respect thereto may properly be stricken from the answer.

2. In such an action, it appearing that a few days before the alleged imprisonment the plaintiff had written a letter to one of the defend-

ants charging him with a crime, the court properly refused to allow the defendants to prove the falsity of such charge, because its falsity was presumed, and because the admission of such evidence would allow the plaintiff to prove, if he could, the truth of the charge, and the real issue would thus be overshadowed by this collateral and remote one.

3. The jury were properly instructed that such letter was no justification for any unlawful acts which the defendants may have committed.

4. Such letter might be considered by the jury in mitigation of punitory damages, but the compensatory damages could not be mitigated or lessened thereby.

5. The exercise of the discretion of the trial court in excluding a juror on the ground that he does not stand indifferent in the cause, will not be disturbed except in case of its abuse.

6. The modification of an instruction to the jury must be deemed a refusal to give it as requested; and when the modified instruction given includes all of the instruction requested and states the law correctly, such modification is no ground for a reversal of the judgment.

APPEAL from the Circuit Court for *Iowa* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for damages for the false imprisonment of the plaintiff by the defendants at Highland, Iowa county, Wisconsin, January 21, 1888. The answer consists of denials, admissions, and the statement of the circumstances as claimed by the defendants. There was evidence on the trial tending to prove the facts as claimed by the plaintiff and as stated to the jury by the trial court, as follows:

"The plaintiff claims that upon January 21, 1888, the defendants, with others, met at the house of the defendant *Thomas Dempsey*, most of them at the invitation of the latter; that *Mr. Dempsey* then read to them a letter which the plaintiff had written to him a short time before, which letter has been read to you in evidence; that after reading the letter *Mr. Dempsey* told the defendants and said others who had met with them, to go and find *Mr. Grace* and

bring or fetch him to him; that thereupon the defendants and said others left the house of *Mr. Dempsey* with the purpose of bringing him *(Grace)* there; that pursuant to such purpose they went to the law-office of the latter, some of them going into the office and the others remaining outside or upon the steps leading to the office; that one of those who went into the office seized him, and he was informed that they had come to have him go with them to the house of *Mr. Dempsey;* that being frightened by such seizure and the array of men within his office, and in fear that if he refused to go to the house of *Mr. Dempsey* he would be compelled to do so by violence, he said he was willing to go with them; that he went with them from his house towards the house of *Mr. Dempsey;* that when near the house the latter appeared at the front door and said, ' Bring him in;' that, being surrounded by the defendants and the others who had gone for him, and fearing that if he did not walk into the house he would be forced in, he walked into the house; that when he got in he was seized by the collar by *Mr. Dempsey*, and compelled to go upon his knees, those who as aforesaid had gone for him being in the same room or its immediate vicinity, and that while he was upon his knees *Mr. Dempsey* struck him in the face and asked him if he would take back the statements made in the letter; and that thereupon he said, ' Under the circumstances I will;' that he (the plaintiff) was then permitted to arise, and shortly after left the house; that from the time the defendants and said others came to his office for him he (said plaintiff) was in a state of fear for his personal safety; and that all that he did from the time said parties came into his office until he left *Mr. Dempsey's* house he did by compulsion, being put in fear by the manner and acts of the defendants and said others acting with them, and the array of force about him; that, in consequence of said acts of the defendants and those who acted with them,

he has suffered injury in body, mind, and business. What I have said concerning the claim of the plaintiff as to what the evidence proves is not given as my opinion of what is proved. I have no right to express an opinion upon what the evidence proves or fails to prove."

The letter mentioned in the foregoing statement was in evidence, and is as follows: " *Thomas Dempsey* — Sir: Some time since I accused you of being criminally intimate with my wife, giving you my reasons therefor. You neither denied or admitted the same, but tauntingly replied that your conscience did not trouble you for such a thing. I now give you this opportunity of clearing yourself from suspicion and satisfy me, viz.: After dinner to-morrow, the 16th, I will remain at home till two o'clock, in which time you may call and by your oath deny that the above charges are true. This will be sufficient. Failing to do this, I shall take it for granted that you admit the truth of the charge, and will on first sight use you as an adulterous villain who has used my home as a brothel.  J. F. GRACE."

At the close of the trial the jury returned a verdict in favor of the plaintiff, and assessed his damages against the defendants at the sum of $5,000. · The court also submitted to the jury four several questions, which, with the answers to them, were to the effect (1) that they found in favor of the plaintiff upon the ground that he was falsely imprisoned; (2) that the plaintiff was entitled to recover, as compensatory damages up to the time of the trial, the sum of $2,000; (3) that the plaintiff was entitled to recover as damages for future disability the sum of $1,000; (4) that there should be awarded to the plaintiff, in addition to compensatory damages and as a punishment to the defendants, the sum of $2,000. The court thereupon ordered judgment upon such verdict and findings in favor of the plaintiff and against the defendants; and from the judgment entered thereon accordingly the defendants appeal.

*W. E. Carter*, attorney, and *S. U. Pinney*, of counsel, for the appellants, contended, *inter alia*, that it was error to strike out a portion of the answer. Provocation may be pleaded and proved to limit the recovery of vindictive damages. *Maxwell v. Kennedy*, 50 Wis. 649; *Stacey v. Portland Pub. Co.* 68 Me. 279; Sedg. on Dam. 455; *Morely v. Dunbar*, 24 Wis. 183; *Wilson v. Young*, 31 id. 574; *Brown v. Swineford*, 44 id. 289. The facts therein alleged, and the letter of January 15, 1888, together with proof that the charge made in such letter was false, ought to have been received to diminish and lessen full compensatory damages, or to show that such damages in this case would be much less than in a case not attended with provocation to outbreak of passion or injury. In any event, these facts should have been allowed to reduce compensatory damages, so far as injury to the feelings formed, or could form, a part of such damages. *Davis v. Franke*, 33 Grat. 413; *Ward v. White*, 9 S. E. Rep. (Va.), 1021; *Prentiss v. Shaw*, 56 Me. 427; *Thrall v. Knapp*, 17 Iowa, 468; *Gronan v. Kukkuck*, 59 id. 19; 2 Greenl. on Evi. secs. 93, 267; *Lee v. Woolsey*, 19 Johns. 319; 1 Suth. on Dam. 227–8; *Keiser v. Smith*, 71 Ala. 481; *Fraser v. Berkeley*, 2 Moody & R. 4; *Watts v. Fraser*, 7 Carr. & P. 369; *Robinson v. Rupert*, 23 Pa. St. 523; *Byers v. Horner*, 47 Md. 23; Sedg. on Dam. 521, note *b; Keyes v. Devlin*, 3 E. D. Smith, 518; *Murphy v. McGrath*, 79 Ill. 594; *Willis v. Forrest*, 2 Duer, 310; *Mowry v. Smith*, 9 Allen, 67; *Tyson v. Booth*, 100 Mass. 258; *Bonino v. Caledonio*, 144 id. 299; *Detroit D. P. Co. v. McArthur*, 16 Mich. 453; *Welch v. Ware*, 32 id. 77; *Corning v. Corning*, 6 N. Y. 97, 103; *Dean v. Horton*, 2 McMullen, 147; *Bartram v. Stone*, 31 Conn. 159; *Adams v. Waggoner*, 33 Ind. 531; *Fairbanks v. Witter*, 18 Wis. 287, 292. The exclusion of the juror Nelson was error. He was clearly a competent juror. *Schoeffler v. State*, 3 Wis. 824; *Freeman v. People*, 4 Denio, 34. It is no answer to say that

the defendant was not prejudiced by his exclusion. The question is not whether the jury that rendered the verdict was composed of impartial men or not, but whether the jury was selected in accordance with the law. *Scranton City v. Gore*, 124 Pa. St. 595, 609; *Theisen v. Johns*, 40 N. W. Rep. (Mich.), 729; *People v. McQuade*, 110 N. Y. 284, 305–6; *Gulf, C. & S. F. R. Co. v. Keith*, 11 S. W. Rep. (Tex.), 1118.

For the respondent there was a brief by *Samuel W. Reese* and *John M. Olin*, and oral argument by *Mr. Olin.* They argued, among other things, that evidence of the relations between *Dempsey* and the plaintiff prior to the writing of the letter of January 15, 1888, could not be received in mitigation of punitory damages. *Lee v. Woolsey*, 19 Johns. 319, 10 Am. Dec. 230; *Avery v. Ray*, 1 Mass. 12; *Rawlings v. Comm.* 1 Leigh, 581, 19 Am. Dec. 757; *Keiser v. Smith*, 71 Ala. 481, 46 Am. Rep. 342; *Cummins v. Crawford*, 88 Ill. 312, 30 Am. Rep. 558; *Gronan v. Kukkuck*, 59 Iowa, 19; *Jacaway v. Dula*, 7 Yerg. 82, 27 Am. Dec. 492; *Fullerton v. Warrick*, 3 Blackf. 219, 25 Am. Dec. 99; *State v. Jackson*, 17 Mo. 544, 59 Am. Dec. 281; *Collins v. Todd*, id. 537; *Rochester v. Anderson*, 1 Bibb, 428; *Sheffill v. Van Deusen*, 15 Gray, 485; *Martin v. Minor*, 50 Miss. 42; *Dupee v. Lentine*, 147 Mass. 580; *Quinby v. Tribune Co.* 38 Minn. 528. The juror Nelson was properly excused. His own examination shows that he was not an indifferent juror. And defendants cannot complain if the cause was tried by an impartial jury. Thompson & M. on Juries, 270–271, 258; *Sutton v. Fox*, 55 Wis. 531.

CASSODAY, J.   At the time of the occurrence in question, January 21, 1888, the defendant Rev. Father *Thomas Dempsey* was the pastor of St. Philip's Catholic Church at Highland, Iowa county, Wisconsin, and had been for several years.   During the same time the plaintiff was a lawyer at

Highland.   He had some years before married a cousin of
the priest; and he and his wife were both members of that
church.   For some time before the  occurrences in question
there had been an unfriendliness or misunderstanding be-
tween the plaintiff and the priest.   The plaintiff wrote and
sent to the priest the letter mentioned, January 15, 1888,
and it was received by him on the same day.   The letter
contained a grave charge against the priest.   In writing
the letter, the plaintiff, as a member of the church, assumed
a responsibility which undoubtedly subjected him to inves-
tigation by the church or the constituted authorities thereof,
and to be dealt with according to his merits.   This court
has recently disclaimed all right " to determine mere ques-
tions of faith, doctrine, or schism, not necessarily involved
in the enforcement of ascertained trusts," nor the " deter-
mination of legal rights."   *Fadness v. Braunborg*, 73 Wis.
293.   We now disclaim any right of interference with mere
church discipline, in the absence of any invasion of the
legal rights of persons or property.

On the part of the defendants it is claimed, in effect, that
at the time of the occurrences in question the plaintiff was
invited to the parsonage for the purpose of enabling the
priest " to lay the whole matter before the leading mem-
bers of the church, and give the plaintiff an interview be-
fore them; " that the plaintiff came voluntarily, and without
harm from any one, " and then and there retracted " the
charges contained in the letter.   There is evidence tending
to support these claims.   On the other hand, the plaintiff
claims the facts substantially as summarized in the forego-
ing statement.   The evidence is more or less in conflict.
The determination of such conflict was the province of the
jury; and with the preponderance of evidence this court
has nothing to do.   There is certainly some evidence in
the case to sustain the claims of the plaintiff; and hence,
for the purposes of this appeal, the verdict and findings of
the jury must be accepted by us as verities.   We are only

Grace vs. Dempsey and others.

to consider, therefore, the correctness of such rulings of the trial court as have been challenged. The assignments of error are thirty-one in number. As to many of them, the rulings of the court were so manifestly correct as to require no mention. All of them are such as might arise on any trial for false imprisonment, and hence are common in their application. We shall only consider those material questions which seem to call for an expression of opinion.

1. Error is assigned because the court struck from the answer the portion relating to the action of the village board while the plaintiff was president thereof in 1885, respecting the sale of liquor on Sunday, and certain publications and controversies in consequence thereof. Certainly, such allegations, had they been proved, would have constituted no defense or mitigation of damages for false imprisonment more than two years afterwards. It is never essential to prove surplusage, and when such proof is offered it should be rejected. The only seeming excuse for such allegations in the answer is the fact that the complaint also alleged matters entirely irrelevant to the alleged false imprisonment.

2. We are not disposed to reverse this judgment for the exclusion of the juror Nelson.[1] In so far as there is an ab-

---

[1] The printed case states that "upon the examination of Mr. Nelson as a juror, after the usual questions were propounded by the court, the court asked the following questions:

"'Q. In what newspapers have you read about this matter? A. The *Dodgeville Sun.* Q. Did you read anything in any other paper? A. No, sir. Q. How many articles did you read in the *Dodgeville Sun?* A. Two, I believe. Q. When did you read them? A. I can't state exactly; but as soon as they came out. Q. Did you read them all through? A. Yes, sir. Q. Did you have any idea as to whether *Mr. Grace* was right or wrong from reading them? A. I did not, but of course I had some little opinion, but I could not say a real opinion of it.'

"Whereupon the court excluded him, stating that this being the last juror to be drawn, he proposed to have one free from any possible objection, and defendant's counsel objected to the court discharging this juror."— REP.

sence of statutory regulation or rule of court, the trial court must necessarily exercise a very large discretion in the impaneling of a jury; and the exercise of such discretion will not be disturbed except in case of its abuse or the violation of some rule of law. *Santry v. State,* 67 Wis. 67; *Sutton v. Fox,* 55 Wis. 531; *Olson v. Solveson,* 71 Wis. 663; Thomp. & M. Juries, §§ 258, 270, 271. The statute expressly precludes this court from reversing any judgment for any error not affecting the substantial right of the appellant. Sec. 2829, R. S. There is nothing in the record to indicate that by such ruling the defendants were in any way prejudiced.

3. Error is assigned because the court refused to allow the defendants to prove that the charges contained in the letter were false. As indicated, the letter was received by the priest six days before the alleged imprisonment, and the charge contained in the letter relates to matters therein stated as transpiring some time before. The learned counsel for the defendants are undoubtedly right in claiming, in effect, that it must be presumed that the priest was innocent of the charges contained in the letter and that such charges were false. Such we understand to be the well-established rule of law. In an action for libel in the publication of an article charging the commission of a crime, the usual practice is simply to prove the publication; and no one would think it necessary, in addition, to prove that the charges contained in the article were false, since the law presumes all such charges to be false, and puts upon the person making the same the burden of proving them to be true. Such being the presumption of law, the defendants had the full benefit of it upon the trial, while the plaintiff, in the eyes of the law, appeared upon the trial under the disadvantage of having falsely charged the priest with the crime mentioned in the letter. The defendants could not by proof have made the priest's innocence of that charge

any more emphatic. This of itself was a sufficient reason for excluding such proof. But there is another still more commanding; and that is, if the defense had been allowed to put in such proof, then, of course, the door would have been opened for the plaintiff to prove, if he could, that the charges contained in the letter were true. Had such been the course of the trial, the collateral and very remote issue as to such truth or falsity of the charges contained in the letter would have become the absorbing issue, and in fact overshadowed and swallowed up the real issue of false imprisonment. The court very properly excluded such proofs.

4. The defendants requested the court to instruct the jury as follows, which was given, after adding thereto the words in italics: "If the jury find that the plaintiff went to the house of the defendant *Dempsey* without the use of force, actual or threatened, to oblige him to do so; and if the jury further find that the defendants who went to the plaintiff's office went there without any purpose to compel him to go to *Dempsey's* house against his will,— then the defendants other than *Father Dempsey* are not responsible or liable for any blow or blows struck or acts done there, merely because they were present. To make them liable for what transpired there, they must either have taken part in it, or must have known beforehand that it was to be done, *or assented to it and countenanced it at the time it was done.*" This is claimed to be an error, by reason of the provisions of sec. 2853, R. S. Where an instruction is requested and given after the same is modified, it is deemed refused as requested, and only given as modified; and where, as here, the modified instruction given includes all of the instruction requested, and, as modified, correctly states the law applicable to the case, no one is injured, and hence such modification is no ground for reversal. Sec. 2829, R. S.; *Mason v. H. Whitbeck Co.* 35 Wis. 164; *Gilchrist v. Brande,* 58 Wis. 192.

5. Exception is taken because the court charged the jury

Grace vs. Dempsey and others.

to the effect that the letter mentioned was "no justification for any unlawful acts which the defendants may have committed." In a state governed by law, and under a constitution which prevents even the state from depriving any person of his liberty "without due process of law," or denying to any person, however lowly, "the equal protection of the laws" (sec. 1, art. XIV, Amend. Const. U. S.), there would seem to be no ground for claiming that any man or body of men, however exalted, may be a law unto themselves, and thus do what the state cannot,— imprison another "without due process of law."

6. Exception is taken to that portion of the charge to the effect that if the jury found that the plaintiff had been falsely imprisoned by the defendants, and that "such illegal restraint was wilful and malicious," then they were at liberty to "award to the plaintiff, in addition to the compensatory damages, such a sum by way of punishment and example as from all of the evidence" in the case they might determine would be reasonable and just. Exception is also taken because the court charged the jury to the effect that if they found for the plaintiff, then he was entitled to recover full compensatory damages, and that such damages could not be lessened or mitigated by the writing of the letter. This last exception is strenuously insisted upon.

Whatever differences of opinion may have existed in this court prior to the decision of *Craker v. C. & N. W. R. Co.* 36 Wis. 657, as to the question thus involved, it was there settled that in actions for personal torts the "compensatory damages" recoverable "include, not merely the plaintiff's pecuniary loss, but also compensation for mental suffering;" that, in awarding such damages in such cases, "no distinction is to be made between other forms of mental suffering and that which consists in 'a sense of wrong or insult.'" And a contrary intimation in a former case was

thereby overruled. In *Fenelon v. Butts*, 53 Wis. 344, "the plaintiffs upon the trial waived all claim to exemplary damages." The court refused to instruct the jury to the effect that if the defendant was liable for the false imprisonment alleged, then they "should take into consideration the circumstances of the supplementary proceedings;" and, if they found that the defendant " was acting in good faith, in an honest endeavor to discover the plaintiffs' property, before a person whom he supposed to be a legal officer, these circumstances " were " to be considered in mitigation of damages." The court held, however, " that, while proof of defendant's good faith is admissible to mitigate punitory damages, it cannot be considered to mitigate compensatory damages, including those allowed for injury to the feelings." This was followed in *Corcoran v. Harran*, 55 Wis. 122. In this last case the jury were, in effect, expressly instructed to give the plaintiff such amount as they thought "reasonable and just under the circumstances." These cases are not in conflict with *Maxwell v. Kennedy*, 50 Wis. 645, since in an action of libel the plaintiff's bad character would necessarily prevent his actual damages from being as large as if he were a person of good character.

We are asked to overrule *Fenelon v. Butts* and *Corcoran v. Harran, supra,* upon the point above indicated. After a careful consideration of the matter, we must refrain from doing so. In the very recent case of *Goldsmith's Adm'r v. Joy*, 17 Atl. Rep. (Vt.), 1010, the above and other cases in this court, as well as numerous cases in other courts, are carefully reviewed, and the conclusion reached that "provocation cannot mitigate actual damages for assault and battery." Of course a plaintiff's compensatory damages are limited to such as he actually sustains, under all the circumstances; and it is such actual damages that cannot be lessened or mitigated. In the case last cited, it is maintained that the right to recover actual damages is in no way de-

pendent on the intention of the defendant; that "even lunatics and idiots are liable for actual damages done by them to the property or person of another." The moment it appears that the defendant was actuated by malice in doing the act complained of, then the jury are at liberty to award punitive damages; and since these may always be mitigated or lessened by provocation, even to the extent of extinguishing them altogether, it follows that the damages which are not subject to such mitigation are such as are given by way of compensation merely. Since the jury awarded the plaintiff exemplary damages, and since, under the instructions given, they were at liberty to, and probably did, mitigate or lessen the amount of such punitive damages by reason of the letter, the defendants received the same benefit therefrom that they would had such deduction been made from the actual damages instead of from the exemplary damages.

7. Assuming the facts to be as manifestly found by the jury, and we cannot say that the damages were excessive.

The other numerous exceptions in the case must be regarded as overruled. The several rulings to which such exceptions were taken are too clearly right to require mention.

*By the Court.*— The judgment of the circuit court is affirmed.