STATE of Wisconsin, Plaintiff-Respondent,

v.

Ben CHOSA, Jr., Defendant-Appellant-Petitioner.

Supreme Court

*No. 80-1903-CR. Argued June 2, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 280.)

For the defendant-petitioner there was a brief (in court of appeals) by *William Lundstrom,* supervising attorney, Legal Assistance to Institutionalized Persons Program, of Madison; and a reply brief (in supreme court) by *Frank J. Remington* and *Ben Kempinen,* supervising attorneys, Legal Assistance to Institutionalized Persons Program, and oral argument by *Mr. Kempinen.*

For the plaintiff-respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Amicus curiae brief was filed by *Milton Rosenberg,* Indian Law Center, Law School, University of Wisconsin; and *Douglas B.L. Endreson,* Native American Rights Fund, of Boulder, Colorado.

STEINMETZ, J. The issues in this case are:

(1) Did the trial court violate defendant-appellant-petitioner's rights to equal protection of the law in excusing for cause all Native Americans from the jury panel without objection by defense counsel?'

(2) Was the defendant denied his right to the effective assistance of counsel?

The court of appeals answered both questions in the negative and affirmed the circuit court for Vilas County, the Honorable Robert H. Gollmar, Reserve Judge, presiding.

In the early morning hours of June 8, 1975, Ben Chosa, Jr. (defendant), a Chippewa Indian, shot and killed his half-brother, Leonard Chosa. The defendant was charged with first-degree murder. The shooting took place on the Lac du Flambeau Indian Reservation in Vilas county.

The jury trial began on May 18, 1976. Although Native Americans constituted approximately 10% of the population of Vilas county, all of the Native Americans that were called during *voir dire* were subsequently excused from jury service by the court.

Ninety-one potential jurors were called for the array. Nine Native Americans were called but after examining three of those jurors, the judge excused the remaining Native American jurors.

Before the jury selection even began, the judge stated:

". . . I suspect that any Indian that might be called in here tomorrow probably would be likely to know rather intimately one or both of the people involved, . . . so he

probably couldn't serve. . . . I'd be inclined to excuse them if they ask."

The defendant was ultimately convicted of first-degree murder. In denying the defendant's post-conviction motion, the judge explained his reasons for excluding all Native Americans as follows:

"[A]ll of these Indians were from the Lac du Flambeau reservation where the murder occurred. This is a small reservation, population-wise, and has as I recall it about one thousand people. It was obvious to the Court by the time we tried this case that there was great tension and considerable fear involved in the case. It was obvious to the Court that any of the Indians living on the reservation would have discussed the case and would have heard discussions by other members of this small closely knit community. Several of the proposed jurors indicated their fear of involvement and clearly there was a division of opinion on the Reservation as between the defendant and his half-brother who was killed.

"Again, looking at the matter with hindsight it is possible that the Court would have made a better record if he had spent several hours interrogating each of the Indians on the array as to their feeling and knowledge in the matter. The Court, frankly, is of the opinion that it is very doubtful that these people would have expressed themselves as freely to the Court as might be desirable. In any event, I was satisfied that all of them should be excused for their own sake and partly because of the obvious knowledge they would have. . . ."

There was no objection by the defendant to the judge's excusing of all Native Americans from the jury panel, and the state therefore claims he waived any challenge. The state argues that defendant's trial attorney did not object to excusing all Native Americans from the jury panel, because both he and the defendant perceived the exclusion of Native Americans as working for the benefit of the defendant. That is an improper implication that follows from an assumption that a person does not wish to be judged by members of one's own class or

group, since they will be more critical than strangers to the group. That argument has no substance nor proof and has been discarded by the United States Supreme Court. It certainly has no substance in a case of this nature where an incomplete voir dire was conducted.

The judge questioned three Native American jurors who each stated he or she knew the parties and each had some personal fear. Then the judge stated that because of local conditions, he would excuse any of the remaining six Native American jurors who wished to be excused. Those six then stated they did not want to serve on the jury, and they were in fact excused.

The court did not conduct individual questioning of any of the six jurors either in private with counsel and defendant present or in the presence of the other jurors. There is, therefore, no record showing the fears of the six, whether real or imagined, or that they were individually in any manner unqualified as jurors. It would not have impeded the selection to any great extent in conducting the *voir dire* of the remaining six jurors so the record would show whether there was a basis for the judge excusing them for cause or whether they just preferred not to make a decision in the case. Their reasons should have been examined and recorded. All the record shows is that when the judge offered to excuse them because they were Native Americans, they accepted his proposal.

"An individual's personal predilection not to serve as a juror, standing alone, is not contemplated by the statutes as a basis for exclusion, exemption, excuse or disqualification. . . ." *State v. Coble,* 100 Wis. 2d 179, 213–14, 301 N.W.2d 221, 237 (1981).

The judge's purposeful and intentional, although wellmeant, exclusion of the Native Americans as potential jurors in this case by excusing them as a class from ser-

vice without a proper examination and an individual determination of cause violates the equal protection clause of the United States Constitution.[1] As the United States Supreme Court stated in *Swain v. Alabama,* 380 U.S. 202, 203–05 (1965) :

"[A] State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause. *Ex parte Virginia,* 100 U.S. 339; *Gibson v. Mississippi,* 162 U.S. 565. This principle was further elaborated in *Carter v. Texas,* 177 U.S. 442, 447, where, in respect to exclusion from grand juries, the Court said :
" 'Whenever by any action of a State, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied . . . .'
"And it has been consistently and repeatedly applied in many cases coming before this Court. The principle of these cases is broadly based.
" 'For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government.' *Smith v. Texas,* 311 U.S. 128, 130.
"Further, '[j]urymen should be selected as individuals, on the basis of individual qualifications, and not as members of a race.' *Cassell v. Texas,* 339 U.S. 282, 286 (opin-

---

[1] Art. XIV, sec. 1 of the United States Constitution provides:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

ion of Mr. Justice Reed, announcing judgment). Nor is the constitutional command forbidding intentional exclusion limited to Negroes. It applies to any identifiable group in the community which may be the subject of prejudice. *Hernandez v. Texas,* 347 U.S. 475."

As the U.S. Supreme Court stated in *Smith v. Texas,* 311 U.S. 128, 132 (1940) : "If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand."

The error in the exclusion of Native Americans as potential jurors in this case is that it was done as a result of the judge's presumption that all members of the class would be incompetent to serve due either to prior knowledge they might have of the parties or the crime or a fear to act. This judgment was not permissible absent individual examination to determine the specific knowledge or attitude each juror possessed. The state has failed to rebut the defendant's prima facie showing of discrimination and thus the defendant's conviction must be reversed and a new trial ordered. *Patton v. Mississippi,* 332 U.S. 463, 466 (1947) ; *Avery v. Georgia,* 345 U.S. 559, 563–64 (1953) ; *Whitus v. Georgia,* 385 U.S. 545, 552 (1967) ; *Jones v. Georgia,* 389 U.S. 24, 25 (1967) ; *Alexander v. Louisiana,* 405 U.S. 625, 632–33 (1972).

The judge's fear that Native American jurors would not express themselves freely or fully participate in deliberations was disproven by the trial itself. At the trial, 25 witnesses, including the defendant, testified. Of the eight witnesses who were identifiable as Native Americans, three testified for the prosecution and five for the defense.

In Wisconsin by statute, the power to exclude a group from jury service is specifically limited to sec. 255.02 (3) (b), Stats. 1973,[2] to exclusion based on a finding of

---

[2] Sec. 255.02(3) (b), Stats. 1973, provided:

"(b) Any class or group of persons may, for the public interest, be excluded from the jury panel or excused from service as jurors

"undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice." No such finding was entered in this record nor would this record sustain such finding. Neither does the record support the individual exclusion of persons whom the trial judge identified as Indians. Neither the record nor the inferences logically derived therefrom support the exercise of discretion in the exclusion of Native American jurors as a group or individually. The trial judge's action, therefore, constitutes an abuse of discretion. *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

The United States Supreme Court in *Peters v. Kiff*, 407 U.S. 493, 502–03 (1972) stated:

"Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that due process is de-

by order of the judge based on a finding that such jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice."

This section was later revised and renumbered by chs. 187, 318, Laws of 1977, effective August 1, 1978, and is now sec. 756.02(2), Stats., and reads as follows:

"(2) (a) Any person or group of persons may be excluded from the jury panel or excused from service as jurors by order of the judge based on a finding that jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice. The exclusion or excuse shall continue for a period deemed necessary by the judge, at the conclusion of which the person or group of persons shall reappear for jury service in accordance with the order of the judge.

"(b) A state legislator or full-time elected official shall be excused from service as a juror if the official states to the court that jury service would interfere with the performance of his or her official duties.

"(c) No citizen may be excluded from service as grand or petit juror in any court of this state on account of race or color or because of a physical condition, except as provided in s. 756.01(2)."

nied by circumstances that create the likelihood or the appearance of bias. This rule, too, was well established long before the right to jury trial was made applicable in state trials, and does not depend on it. . . . As this Court said in *In re Murchison, supra,* '[f]airness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.' 349 U.S., at 136.

"These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.

". . .

"But the exclusion from jury service of a substantial and identifiable class of citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases."

In *Cassell v. Texas,* 339 U.S. 282, 286–87 (1950), the United States Supreme Court held:

"Succinctly stated, our reason was that the Constitution requires only a fair jury selected without regard to race. . . . An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race."

Many of the United States Supreme Court citations dealt with the jury array; however, their intended effect and logic apply equally well to the jury panel from which the ultimate trial jury is selected. The import of those decisions would be nullified if their holdings were applied exclusively to choosing the array.

This court has repeatedly recognized the vital, though not unrestricted, role of the trial judge in impaneling a

jury. "The trial judge has a wide discretion in determining the qualifications of the jurors." *Kanzenbach v. S.C. Johnson & Son, Inc.*, 273 Wis. 621, 79 N.W.2d 249 (1956).

Whether a juror is to be dismissed for cause rests within the sound discretion of the trial court. *Nyberg v. State*, 75 Wis. 2d 400, 249 N.W.2d 524 (1977); *Nolan v. Venus Ford, Inc.*, 64 Wis. 2d 215, 218 N.W.2d 507 (1974); *Grace v. Dempsey*, 75 Wis. 313, 320–21, 43 N.W. 1127, 1129 (1889).

In *Good v. Farmers Mut. Ins. Co.*, 265 Wis. 596, 598, 62 N.W.2d 425 (1954), we stated:

"The rule in this state was stated in *Burns v. State*, 145 Wis. 373, 128 N.W. 987, that a juror's incompetency does not exist, necessarily, as a matter of law, but depends upon the trial judge's determination of fact in view of all the evidence and mental characteristics of the juror as disclosed by his presence in court and manner of testifying."

This court has ruled that the statutory grounds for challenges for cause are not exclusive. *Nolan v. Venus Ford, Inc., supra; Sutton v. Fox*, 55 Wis. 531, 13 N.W. 477 (1882). As we recently reiterated:

"Under the United States constitution a criminal defendant in a state court is guaranteed an impartial jury by the Sixth Amendment as applied to the states through the Fourteenth Amendment. Principles of due process also guarantee a defendant a fair trial by a panel of impartial jurors. In Wisconsin a defendant is entitled to a trial by an impartial jury as a matter of state constitutional law under sec. 7, art. I of the Wisconsin Constitution."[3] *Hammill v. State*, 89 Wis. 2d 404, 407, 278 N.W. 2d 821 (1979).

---

[3] Art. I, sec. 7 of the Wisconsin Constitution provides:

"**Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to

In *Hammill,* Id. at 408, we also stated:

"Control of the *voir dire* examination rests primarily with the trial court. *Voir dire* 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.' *Conners v. United States,* 158 U.S. 408, 413 (1895) ; *Ham v. South Carolina,* 409 U.S. 524, 527–28; *Aldridge v. United States,* 283 U.S. 308, 310 (1931). The trial court has broad discretion as to the form and number of questions to be asked. The exercise of this discretion and the court's restriction upon inquiries, however, are subject to 'the essential demands of fairness.' *Aldridge, supra* at 310."

As previously noted, the trial court's discretion in the impaneling of a jury was early recognized by Wisconsin courts. In *Grace v. Dempsey, supra* at 320–21, this court declared:

"In so far as there is an absence of statutory regulation or rule of court, the trial court must necessarily exercise a very large discretion in the impaneling of a jury; and the exercise of such discretion will not be disturbed except in case of its abuse or the violation of some rule of law. *Santry v. State,* 67 Wis. 67; *Sutton v. Fox,* 55 Wis. 531; *Olson v. Solveson,* 71 Wis. 663; Thomp. & M. Juries, secs. 258, 270, 271."

The issue is not whether the jury panel was representative of a fair cross-section of the community, but rather whether the deliberate removal of a class or group by the trial judge for "cause" without examination of individuals in the group deprived the defendant of a substantial right. We conclude that it did. The exclusion of the entire nine Native Americans from service as potential jurors without any established reason stigmatized the entire class and was an abuse of discretion. The trial

compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."

court did not conduct any *voir dire* of six of the nine Native Americans, and even those responses that were elicited from the three who were questioned did not provide a sufficient basis for exclusion for cause. The defendant's substantial rights were affected and the appropriate remedy is reversal and a new trial. Sec. 805.18(2), Stats.[4]

The second issue is the claim of ineffective counsel, and it becomes moot in light of this court's order for reversal and new trial.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the trial court for a new trial.

---

[4] Sec. 805.18(2), Stats., provides:

"(2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial."