THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RUTH MIMS, Defendant-Appellant.

First District (2nd Division)    No. 77-1356

Opinion filed December 29, 1981.

Ralph Ruebner and Fe Fernandez, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Richard B. Levy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Following a jury trial held on July 21, 1977, defendant was convicted of murder and sentenced to 14 to 20 years in the penitentiary. The appeal filed by defendant's privately retained counsel was dismissed for want of prosecution on June 28, 1978. Counsel made a motion to withdraw as defendant's attorney on April 24, 1979, which was denied for lack of jurisdiction. The State Appellate Defender was substituted as defendant's attorney and moved to vacate the order dismissing the appeal, which was denied on August 27, 1979. In *People v. Mims* (1980), 82 Ill. 2d 63, 66, 411 N.E.2d 215, the Illinois Supreme Court, in exercise of its supervisory authority, ordered that defendant's appeal to the appellate court be reinstated. The sole issue on appeal is whether defendant was denied her right to a fair trial by the State's exercise of its peremptory challenges, allegedly so as to exclude black women from sitting on the petit jury.

The record concerning the jury selection process is sketchy, particularly in the beginning, when only part of the proceedings were recorded. Defendant moved that since there were only 7 blacks on the 49-veniremen panel, the court should order the clerk to send up "at least 15 blacks." The court denied defendant's motion observing that 40 people were called up, of which 8 were black. No court reporter was present to record the *voir dire* examination of the individual prospective jurors and the exercise of the first 6 of the State's 10 peremptory challenges. Approximately halfway through the jury selection process, defendant moved that the entire venire be dismissed on grounds that it was tainted by the comments of an excused juror. The trial court denied defendant's motion but ordered that a court reporter record the rest of the proceedings, which was done.

Among these persons who were subject to *voir dire* examination were two blacks, Michael Evans and Louise Hardy. Evans stated that he was reluctant to serve on the jury, because "it is a murder trial and I don't want to have nothing to do with it." When the State moved to excuse Hardy and Evans, defendant objected to the exercise of the peremptory challenges to excuse the "two blacks." The State asserted that it was not attempting to exclude any group and that there were then already two blacks on the jury. The trial court denied defendant's motion, but questioned the State's motive:

> "* * * [Y]ou are telling me now that you have no prejudice yet in almost every one [peremptory challenge] now it is getting to the point where it is strictly a black that you are excluding. * * * I can understand excluding Michael Evans, but I will be frank with you. If you continue in this vein, I am going to maybe take another position."

During the discussion on defendant's motion, the State noted that six of its eight challenges were used on blacks.

Later, the prosecution challenged the one remaining black woman on the venire, Linda Schurm, without asking her any questions, explaining that it did not want an "all-woman jury." The court again appeared skeptical of the State's motive, observing that it had used six of its eight challenges on blacks. At the end of a lengthy legal discussion, however, the court concluded that the presumption that the prosecution was employing the State's challenges to obtain a fair and impartial jury had not been rebutted, and the motion to challenge was allowed.

Because the sole question before the court pertains to the jury selection process, the evidence adduced at trial is not in issue and may be summarized in broader terms than usual; however, our examination of the entire record reveals that the jury's verdict was supported by the requisite quality and quantum of proof. Lavelle Jones, testified that on August 7, 1975, following earlier telephonic communication, defendant entered Jones' house carrying a gun, approached her husband, the victim Richard Mims, and said, "You lied. It's all over." Defendant fired two shots into her husband from a distance of three feet. The victim "stumbled and fell" and was shot by defendant four more times. Cleo Jones testified that on the day in question the victim came to his home to tell him that he had a job "lined up" for Jones. Later, defendant entered his house stating, "This is it between I and you" and started shooting the victim. Defendant kept on shooting even after the victim fell. Officer Fred Schulz testified that at approximately 1:15 a.m. on August 7, 1975, he received a call to go to Jones' home. When he arrived, he asked defendant, "what happened?" Defendant replied, "Yeah, I shot him." The testimony of Officer Robert Bresnahan concerning the incident substantially corroborated Schulz' and need not be set forth.

The defense presented the following evidence. Alma Smight testified that in 1971 the victim and defendant were in an alley together when the former stated in a loud voice, "I will kick your ass." Later that night, she saw defendant's hand bleeding. Lucretia Hasegawa, defendant's sister, testified that she saw bruises on defendant's face more than 10 times, and that once she saw the victim hit and beat defendant. William Ozenborne, James Cooley, Alma Smith and Ardrene Thomas all testified that they had seen bruises on defendant's face several times. Cooley further testified that he had heard numerous "arguments and fighting" between victim and defendant.

Defendant testified that during her 11-year marriage with the victim she became an alcoholic. She described several occasions when her husband hit or bit her. Between noon of August 6 and the early morning

hours of August 7, she consumed an estimated 18 to 24 cans of beer. When she went with a gun to the Jones' house, Val opened the door and started hollering and screaming. After hearing some "popping," she walked out of the house but returned a short time later to call the police. On cross-examination, defendant testified that after she entered Jones' house, her husband began walking toward her with a glass in one hand and his other hand up in the air. She did not shoot her husband nor did she hear a gunshot. She did not know what her husband was doing immediately prior to the "first firecracker."

During rebuttal testimony, Officer John Yucaitis testified that he spoke briefly with defendant at the scene of the crime and that in his opinion defendant was not drunk; she did not stumble or slur her speech. On cross-examination he stated that he had seen people under the influence of alcohol who neither staggered nor slurred their speech.

The jury, which consisted of eight women and four men, of whom two were blacks, found defendant guilty of murder.

I

■█ ■ Defendant contends that she was denied her right to a fair trial because of the State's use of its peremptory challenges to exclude black women from the petit jury. Defendant relies on *Peters v. Kiff* (1972), 407 U.S. 493, 33 L. Ed. 2d 83, 92 S. Ct. 2163, and *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, to support her claim under the Federal Constitution. In *Peters*, the Supreme Court addressed the question of whether a white defendant had standing to attack the grand or petit jury selection process where the claim is that blacks were systematically excluded from jury service. Since the standing of defendant is not in issue in the instant case, *Peters* is inapposite. In *Swain*, the Supreme Court held that, in light of the purpose of the peremptory system, the Constitution does not require an examination into the prosecutor's reasons for the exercise of the State's challenges. The presumption in any given case is that the State is using its challenges to obtain a fair and impartial jury to try the case; this presumption is not overcome by allegations that all blacks were excused by the State's peremptory challenges. (380 U.S. 202, 222, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) The State was held to have constitutionally exercised its peremptory challenges to remove six blacks, thereby leaving an all-white jury; however, the systematic use of peremptory challenges against Negroes over a period of time, in case after case, whatever the circumstances, raises a *prima facie* case of discrimination in violation of the fourteenth amendment. (380 U.S. 202, 222-28, 13 L. Ed. 2d 759, 774-77, 85 S. Ct. 824, 837-40.) In the present case it was the exclusion of a particular sex of black persons of which defendant complains, rather than blacks as a group.

■■ Defendant maintains that the *Swain* presumption that the State exercises its challenges in any given case to obtain an impartial jury, was overcome by the "prosecutor's statement" and by the failure of the State to question two prospective female jurors. Defendant's first contention is unclear, because the "statement" referred to is not identified. Her second argument ignores the fact that the prosecution listened to the *voir dire* examination of Hardy and Schurm by defendant and the trial court before exercising its peremptory challenge. *Swain* makes clear that the presumption is not rebutted by allegations that all members within a racial class have been removed. (380 U.S. 202, 222, 13 L. Ed. 2d 759, 773, 85 S. Ct. 824, 837.) Under such circumstances it is difficult to see how the exclusion of a more particularly identifiable group, black females, can serve to rebut the presumption. Finally, there is nothing in the record to suggest that the State has employed its challenges to systematically exclude black females over a period of time, in case after case, whatever the circumstances, in order to raise a *prima facie* case of discrimination under *Swain*.

## II

Defendant argues that even if her United States constitutional rights were not offended, her rights under the Illinois Constitution were infringed by the exercise of the State's challenges. A challenge similar to that articulated in Swain was denied in Illinois even prior to *Swain*, however, in *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809, *cert. denied* (1960), 362 U.S. 928, 4 L. Ed. 2d 747, 80 S. Ct. 755. Further, defendant's position appears untenable in light of the Illinois Supreme Court cases decided after *Swain*. In *People v. Butler* (1979), 46 Ill. 2d 162, 165, 263 N.E.2d 89, the opinion closely tracks the language of *Swain*, holding that the presumption in favor of the prosecutor is not rebutted by " 'allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.' " (46 Ill. 2d 162, 165, quoting *Swain*, 380 U.S. 202, 222, 13 L. Ed. 2d 759, 773, 85 S. Ct. 824, 837; see *People v. King* (1973), 54 Ill. 2d 291, 298, 296 N.E.2d 731. Accord, *People v. Attaway* (1976), 41 Ill. App. 3d 837, 852, 354 N.E.2d 448; and *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 783, 333 N.E.2d 8.) In *People v. Powell* (1973), 53 Ill. 2d 465, 478, 292 N.E.2d 409, the court held that the exercise of peremptory challenges removing five prospective black jurors and leaving one failed to constitute a *prima facie* case of purposeful discrimination. 53 Ill. 2d 465, 478.

Defendant's argument is founded primarily upon certain out-of-State cases, especially *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, a case decided subsequent to the Illinois Supreme Court cases noted above. The *Wheeler* court held that the use of

peremptory challenges to remove prospective jurors on the sole ground of "group bias" violates defendant's rights to a fair trial under the California Constitution. (22 Cal. 3d 258, 277, 583 P.2d 748, 761-62, 148 Cal. Rptr. 890, 903.) Although the court retained a presumption that any given peremptory challenge was constitutionally permissible, it lowered the quantum of proof necessary to rebut this presumption. A party must meet three requirements in order to rebut and to make a *prima facie* case of discrimination:

> "First, * * * he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association * * *." (22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905.)

If a party meets these conditions, thereby making a *prima facie* case of discrimination, the burden shifts to the other party to demonstrate that the challenges in issue were not predicated on group bias alone. 22 Cal. 3d 258, 281-82, 583 P.2d 748, 764-65, 148 Cal. Rptr. 890, 906.

Several Illinois cases have recently considered *Wheeler*, and reached somewhat different conclusions as to its merit. In *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117, the court appears to have followed the reasoning in *Wheeler*, but declined to reverse on the ground that evidence of purposeful exclusion of blacks from jury service was insufficient. (91 Ill. App. 3d 523, 530-32.) The language in *Smith*, in support of *Wheeler*, has been subsequently narrowly construed as *dictum* in *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 421 N.E.2d 840, and *People v. Bracey* (1981), 93 Ill. App. 3d 864, 870, 417 N.E.2d 1029. In both *Bracey* and *Vaughn*, the courts declined to decide whether *Wheeler* should be adopted in Illinois, because defendant failed to establish a *prima facie* case of purposeful discrimination.

The court in *People v. Fleming* (1980), 91 Ill. App. 3d 99, 105-06, 413 N.E.2d 1330, and this court in *People v. Allen* (1981), 96 Ill. App. 3d 871, 878, 422 N.E.2d 100, expressly refused to follow *Wheeler*, finding the test articulated therein vague and uncertain, and one which would severely undermine the purpose of the challenge. In light of the foregoing authorities we decline to alter the rule prevailing in Illinois, particularly where, as in this case, evidence of purposeful exclusion of black females is speculative and insufficient.

■■ ■ Also applicable here is the rule, mentioned in other contexts, that defendant is not entitled to seek particular kinds of jurors, only fair and impartial jurors. *Brown v. New Jersey* (1899), 175 U.S. 172, 175, 44 L. Ed.

119, 120-21, 20 S. Ct. 77, 78; *People v. Jackson* (1977), 69 Ill. 2d 252, 260, 371 N.E.2d 602; *People v. Lobb* (1959), 17 Ill. 2d 187, 302, 161 N.E.2d 325; *People v. Phillips* (1981), 99 Ill. App. 3d 362, 368, 425 N.E.2d 1040.

From the foregoing consideration, we conclude that no rights of defendant, under either the Federal or State constitutions, were infringed by the exercise of peremptory challenges by the prosecution and the jury's verdict, based upon sufficient evidence of guilt must be affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.