(No. 56907.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STANLEY PAYNE, Appellee.

*Opinion filed December 1, 1983.*

CLARK, J., specially concurring.
SIMON, J., dissenting.

Tyrone C. Fahner and Neil F. Hartigan, Attorneys General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Richard A. Devine and Michael B. Weinstein, Assistant Attorneys General, of Chicago, and Michael E. Shabat, Joan S. Cherry and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Kathleen O'Donovan, Ira Churgin, Robert P. Isaacson and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellee.

Alan Raphael, of Jenner & Block, of Chicago, for

*amicus curiae* Chicago Council of Lawyers.

James S. Liebman, of Chicago, for *amicus curiae* NAACP Legal Defense and Educational Fund, Inc.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Maureen Kelly Ivory, of counsel), for *amicus curiae* City of Chicago.

JUSTICE UNDERWOOD delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County Stanley Payne was found guilty of three counts of aggravated battery and one count of armed violence in connection with the shooting of Frederick Perry. He was sentenced to concurrent terms of five years on the aggravated-battery counts and 20 years on the armed-violence charge.

In a Rule 23 order (87 Ill. 2d R. 23) the appellate court held the evidence sufficient to establish defendant's guilt beyond a reasonable doubt. (106 Ill. App. 3d 1154.) In a separate opinion (*People v. Payne* (1982), 106 Ill. App. 3d 1034), however, the court reversed the conviction and remanded the case for a new trial because of what it considered to be constitutional error of reversible magnitude. That court said that it reasonably appears from the record in this case that the prosecutor was peremptorily challenging prospective black jurors simply because they were black. Because of its finding the appellate court held the trial judge should have required the prosecutor to demonstrate that black persons were not being excluded solely because of their race. The failure of the trial court to do so, said the appellate court, violated defendant's sixth amendment right to an impartial jury drawn from a fair cross-section of the community and required a new trial. (U.S. Const., amend. VI; *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.) No question is raised here other

than the correctness of this holding.

Of the ten black persons on the venire from which the jurors in this case were drawn, three were excused by the court for cause, six were excused by the prosecutor through the use of peremptory challenges, and one was accepted by both sides and served as a juror. Defendant objected to the prosecutor's use of peremptory challenges for this purpose on the grounds that those persons so challenged were being excused only because of their color. Two white persons were also peremptorily challenged by the prosecution, and the defense exercised all 10 peremptory challenges on white persons. We note parenthetically that, in their briefs, the parties appear to concede that if, in these circumstances, the prosecutor should have been required to justify his use of peremptory challenges, similar explanation would be required from defense counsel. However, in oral argument defense counsel seemed to urge that explanations could not be required of defense counsel.

Our earlier decisions (see, *e.g.*, *People v. Davis* (1983), 95 Ill. 2d 1; *People v. King* (1973), 54 Ill. 2d 291; *People v. Powell* (1973), 53 Ill. 2d 465; *People v. Butler* (1970), 46 Ill. 2d 162; *People v. Harris* (1959), 17 Ill. 2d 446) consistently rejected claims that minority group members had been improperly excluded from the convicting juries. The opinions in those cases, however, did not specifically consider *Taylor v. Louisiana*, the Supreme Court decision which defendant here urges modified the earlier holding in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. In *Swain* the court held the use of peremptory challenges in particular cases to exclude members of discrete groups was not a violation of equal protection guarantees, but recognized that systematic exclusion of such persons in case after case could infringe upon constitutional protections. Defendant here argues that *Taylor* established a sixth

amendment right to jurors selected from a representative cross section of the community, and that this right precludes the prosecutor from so exercising his peremptory challenges as to eliminate members of a discrete group simply because of that membership. Because the sixth amendment to the Federal Constitution, upon which *Taylor* is bottomed, had not, when *Swain* was decided, been held applicable to the States, the appellate court considered that the *Swain* holding was no longer viable and agreed with defendant.

In *People v. Williams* (1983), 97 Ill. 2d 252, we discussed at length and rejected this specific contention. We there considered the cases upon which defendant and the appellate court in this case relied, and no useful purpose would be served by reiteration of that discussion here. We pointed out *Swain's* emphasis upon the importance of peremptory challenges to the process of selecting an impartial jury, and that court's conclusion that the use of such challenges against group members solely because of such membership was justified in particular cases. Because *Taylor's* concern had been with a sixth amendment right to a "fair cross section of the community on venires, panels, or lists from which petit jurors are drawn" (419 U.S. 522, 526, 42 L. Ed. 690, 696, 95 S. Ct. 692, 696), we concluded that *Taylor* had not diminished *Swain's* precedential value. We noted, too, the *Swain* caveat "that the systematic exclusion of blacks by peremptory challenges in case after case regardless of the particular circumstances involved would raise a constitutional issue." (*People v. Williams* (1983), 97 Ill. 2d 252, 278.) Since the issue in *Williams* concerned only the alleged exclusion of blacks in that case, and *Swain* specifically permitted the use of peremptory challenges for that purpose, we found no error occurred. We made clear our agreement with the *Swain* principle that an essential part of our jury trial system is the right of both

sides in particular cases to exercise peremptory challenges as they deem advisable, and our belief that this principle was unaffected by *Taylor's* announcement of a sixth amendment right to "a fair cross section of the community" on sources from which petit jurors are drawn. Those expressions are dispositive of the only issue before us in this case.

The judgment of the appellate court is reversed and the cause is remanded to that court for consideration of other issues originally argued but not decided.

*Reversed and remanded.*

JUSTICE CLARK, specially concurring:

Although I agree with the underlying notions in the arguments advanced by my colleague Justice Simon, I believe that, based on the facts in this case, the majority opinion is fair and reasonable, and therefore concur in the result with the following comments.

Certainly, no one on this court would disagree with the premise that the systematic exclusion of blacks for jury duty is unconstitutional and should be condemned. However, this is not the situation that we are faced with in the case at bar. A future case may present obvious abuses such as systematic exclusion of jurors on the basis of race, and I would not hesitate to invalidate such a practice, but that is not the case in *People v. Payne*. In this case, while the defendant is black, the victim is also black. The jury that convicted defendant was composed of 11 whites and one black. The prosecutor used six out of eight peremptory challenges to exclude blacks, but the counsel for the defendant used all of his peremptory challenges to exclude whites. Thus we are not faced with the scenario of an all-white jury convicting a black defendant for a crime against a white victim. However, even in the case before us, the systematic exclusion of blacks from this jury would be unconstitutional if proved. I do not believe it was.

Implicit in many of the arguments advanced for reform in the manner of selecting juries is that blacks are less likely to convict fellow blacks than whites. I am not persuaded that this is the case. Many black communities bear the brunt of violent crime, and the citizens of black communities are not automatically more sympathetic to defendants simply because they have black skin. Such arguments merely perpetuate racial stereotypes that have plagued this nation for too long, and are not buttressed by objective studies on jury behavior. (See H. Kalven, The America Jury 195-210 (1966); see generally *McCray v. Abrams* (E.D.N.Y. Dec. 21, 1983), No. 83—4406.) The systematic exclusion of any group based on sex or ethnicity is equally repugnant, but the most effective way to prevent this may be the drastic reduction of peremptory challenges. Such a reform could well be considered by the legislature as the answer to an enormously complex problem.

Prospective jurors are drawn from voter registration rolls, and as blacks register to vote in greater numbers, it may become not only foolhardy, but statistically impossible, to obtain a racially homogenous jury in urban America. Until that day is reached, the judiciary must be vigilant to avoid the systematic exclusion of blacks from jury duty, but in my opinion that is not the situation here. I therefore concur in the result.

JUSTICE SIMON, dissenting:

The use of peremptory challenges to exclude black jurors solely on the basis of their race has denied the defendant, Stanley Payne, his constitutional rights to equal protection of the laws and to a trial by a fair and impartial jury drawn from a cross section of the community where he was tried. The majority's continuing support of this practice will erode public confidence in the fairness and impartiality of our criminal justice system, particularly among the large portion of our population

who are of the same race as the persons who are the objects of the exclusion. While this issue cries out for a bold return to first principles, the majority has offered only an inapplicable precedent and distinctions which I find unsound.

## I
### *Swain v. Alabama* Does Not Require A Reversal of the Appellate Court Decision in this Case

The majority holds that this case is controlled by *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, where the Supreme Court concluded that the use of peremptory challenges to exclude black jurors does not violate the equal protection clause unless "prosecutors have consistently and systematically exercised their strikes to prevent any and all Negroes on petit jury venires from serving on the petit jury itself" (380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837). *Swain*, however, said absolutely nothing about the principal issue considered by the appellate court in this case: whether the use of peremptory challenges to exclude jurors on the basis of race violates the sixth amendment. That amendment was not even held to be applicable to the States through the fourteenth amendment's due process clause until two years after *Swain* was decided. See *Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444.

The fourteenth amendment's equal protection clause and the sixth amendment's guarantee of trial by an impartial jury have entirely different content and scope; the majority therefore errs in assuming that a practice declared constitutional under one provision must be treated the same under the other. For example, in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, the Supreme Court held unconstitutional under the sixth amendment a State's system of exclud-

ing women from jury venires unless they volunteered. The court reached this result in *Taylor* even though it had previously held that a similar system for selecting women did not violate the equal protection clause (*Hoyt v. Florida* (1961), 368 U.S. 57, 7 L. Ed. 2d 118, 82 S. Ct. 159). In *Taylor* the court distinguished *Hoyt* with ease, observing that it "did not involve a defendant's Sixth Amendment right to a jury drawn from a fair cross section of the community." 419 U.S. 522, 534, 42 L. Ed. 2d 690, 700, 95 S. Ct. 692, 699.

In holding that a prosecutor's use of peremptory challenges to exclude black jurors from a particular jury solely on the basis of race does not violate the sixth amendment so long as there is no systematic exclusion of blacks from the jury system, the majority also relies heavily on the Supreme Court's observations in *Swain* concerning the history of peremptory challenges. (See *People v. Williams* (1983), 97 Ill. 2d 252, 276-77.) In *Swain* the Supreme Court observed that the system of peremptory challenges is deeply rooted in our history and "[t]he persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury." 380 U.S. 202, 219, 13 L. Ed. 2d 759, 771-72, 85 S. Ct. 824, 835.

The majority places too much reliance on the weight of history. Although the historical fact that the use of peremptory challenges predates the adoption of the Bill of Rights is remotely relevant to the question before us, it is not conclusive. The Constitution is a living document that each generation must interpret in the light of its own experience. "Our notions of what a proper jury is have developed in harmony with our basic concepts of a democratic society and a representative government." (*Glasser v. United States* (1942), 315 U.S. 60, 85, 86 L. Ed. 680, 707, 62 S. Ct. 457, 472.) We must return to the

basic guarantee contained in the sixth amendment to determine whether it is constitutional for State prosecuting officials to use peremptory challenges to exclude black persons from jury service solely on the basis of race. The fact that a practice has been adhered to for a long time does not justify perpetuating it when it undermines fundamental constitutional guarantees.

In reaching its decision the majority also relies on the Supreme Court's observation in *Swain* that the function of the peremptory challenge is "to eliminate extremes of partiality on both sides" and "to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise" (380 U.S. 202, 219, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 835). By permitting trial attorneys the opportunity to exclude jurors when their developed intuition tells them that the juror is not impartial, the peremptory challenge, according to the majority, helps promote the concept of trial by an impartial jury. Under the majority's view (see *People v. Williams* (1983), 97 Ill. 2d 252, 277-78), this function cannot be served unless the peremptory challenge retains its traditional character as a challenge "exercised without a reason stated, without inquiry and without being subject to the court's control" (*Swain v. Alabama* (1965), 380 U.S. 202, 220, 13 L. Ed. 2d 759, 772, 85 S. Ct. 824, 836).

The majority's extensive reliance on the function of the peremptory challenge is also misplaced. The use of peremptory challenges may well promote the concept of trial by jury by increasing the parties' confidence that the jury deciding their case is impartial. Nevertheless, the Supreme Court has not held that peremptory challenges are required by the Constitution (see, *e.g., Stilson v. United States* (1919), 250 U.S. 583, 586, 63 L. Ed. 2d 1154, 1156, 40 S. Ct. 28, 30), and a State presumably could eliminate such challenges altogether. Peremptory

challenges may often have a useful and legitimate purpose, but they are entitled to no more deference in constitutional analysis than any other device used by State officials to exclude persons from jury service on the basis of race, sex, religion or national origin. To the extent that the practice is unconstitutional under the sixth amendment, any conviction obtained through its use is void. Just as the unconstitutional discharge of State employees cannot be excused by referring to the general rule that employers have the right to hire and fire as they please and for any reason they please (see *Mt. Healthy City School District v. Doyle* (1977), 429 U.S. 274, 283-84, 50 L. Ed. 2d 471, 481, 97 S. Ct. 568, 574), so racial discrimination in the *voir dire* cannot be condoned by simply pointing to the word "peremptory" and asserting that it means what it says.

## II

The Use of Peremptory Challenges to Exclude Black People, as a Group, From Serving on a Particular Jury is Incompatible With the Right to a Trial by Jury Guaranteed by the Sixth Amendment.

The sixth amendment to the Federal Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." (U.S. Const., amend. VI.) "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." (*Smith v. Texas* (1940), 311 U.S. 128, 130, 85 L. Ed. 84, 86, 61 S. Ct. 164, 165.) In *Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 42 L. Ed. 2d 690, 697, 95 S. Ct. 692, 697, the Supreme Court held that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a

jury trial."

The use of peremptory challenges to exclude black persons from jury service violates the sixth amendment for the same reason that the venire selection system in *Taylor* excluding women from the jury venire unless they volunteered was unconstitutional:

"The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the over-zealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge. *Duncan v. Louisiana* [(1968), 391 U.S. 145, 155-56, 20 L. Ed. 2d 491, 499-500, 88 S. Ct. 1444, 1450]. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. *** Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial." (419 U.S. 522, 530, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 698.)

The intentional exclusion of black prospective jurors from a particular jury through the use of peremptory challenges prevents them, as a group, from participating on that jury in the same way as the venire selection system held unconstitutional in *Taylor*, and for that reason this practice also violates the sixth amendment.

The majority, however, in *Williams* and in this case, interprets *Taylor* as only prohibiting the deliberate exclusion of groups from the venire, and as not limiting in any way deliberate exclusions that occur later in the jury selection process. (See *People v. Williams* (1983), 97 Ill. 2d 252, 279.) The distinction the majority attempts to draw is meaningless, for the ultimate purpose of the cross section requirement, announced in *Taylor*, is achieved not when the venire is selected, but when the jury is deliberating:

"When any large and identifiable segment of the community is excluded from jury service, the effect is to remove

from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." (*Peters v. Kiff* (1972), 407 U.S. 493, 503-04, 33 L. Ed. 2d 83, 94, 92 S. Ct. 2163, 2169 (opinion of Marshall, J., joined by Douglas and Stewart, JJ.) (holding that white defendant has standing to raise exclusion of black jurors from grand and petit juries).)

(See also, *Ballard v. United States* (1946), 329 U.S. 187, 194, 91 L. Ed. 181, 186, 67 S. Ct. 261, 264 ("a flavor, a distinct quality is lost if either sex is excluded" from participating on the jury).) The appellate court in this case correctly observed that "[t]he desired goal of interaction of a cross section of the community does not occur within the venire, but rather, is only effectuated by the petit jury that is selected and sworn to try the issues." 106 Ill. App. 3d 1034, 1036.

Also underlying the Supreme Court's decision in *Taylor* is the ideal that qualifications for jury service should be evaluated on an individual and not on a group basis. The court in *Thiel v. Southern Pacific Co.* (1946), 328 U.S. 217, 220, 90 L. Ed. 1181, 1185, 66 S. Ct. 984, 985-86, in the exercise of its supervisory jurisdiction over the administration of justice in the Federal courts, reversed a case decided before a jury because all wage earners and working people had been systematically excluded from jury service. The court recognized that complete representation of every group on every jury would be impossible, but the court decried any practice that allowed governmental officials the discretion to exclude people from participation on juries solely because of their group membership:

"[P]rospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that

those eligible for jury service are to be found in every stratum of society. *Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury."* (Emphasis added.) (328 U.S. 217, 220, 90 L. Ed. 1181, 1185, 66 S. Ct. 984, 985-86.)

(See also *State v. Chosa* (1982), 108 Wis. 2d 392, 321 N.W.2d 280 (trial court may not exclude prospective jurors because of group membership where no individualized assessment of qualifications made at *voir dire*).) The use of peremptory challenges to exclude blacks from jury service solely because of their race is no more in keeping with the concept of individualized evaluation of a juror's qualifications than was the exclusion of women in *Taylor* and of wage earners in *Thiel.* Any deliberate exclusion of all members of a group from participating on a jury violates the sixth amendment whether it occurs at the *voir dire* or when the members of the venire are selected.

So long as our legislature allows peremptory challenges, the problem is to discover in each case whether peremptory challenges are being used to exclude black people from participating on the jury solely on the basis of their race, or whether they are being used against individual black persons for some legitimate purpose. The majority argues that the same standard adopted by the Supreme Court in *Swain* under the equal protection clause should also be applied under the sixth amendment to determine whether prosecutors are using their peremptory challenges for legitimate purposes. The *Swain* requirement of systematic exclusion of black jurors in case after case, however, presents a nearly insurmountable hurdle for an individual defendant, and I have found only two cases decided since *Swain* where defendants actually established this systematic exclusion. *State v. Brown* (La. 1979), 371 So. 2d 751 and *State v. Washington* (La. 1979), 375 So. 2d 1162 (both

148

involving conduct of prosecutors in the same jurisdiction at the same time).

It is obvious why defendants have established so little misuse of peremptory challenges under the *Swain* standard. The prosecutors are the only people who know why peremptory challenges are used against black persons, and they are not telling anyone. It seems to me that if this court imposes the *Swain* requirements on defendants, the only way defendants could get solid evidence on the misuse of peremptory challenges in case after case would be to subpoena assistant State's Attorneys and even State's Attorneys to testify at a hearing during *voir dire* or in a civil class action suit by prospective black jurors or black defendants. Certainly this would provide a spectacle that should be avoided if any alternative is available, and I submit one which this court is inviting by this decision and by its prior decisions in *Davis* and *Williams*.

The prosecutor skips over a problem that Justice Marshall recently identified when he observed that the "case after case" requirement of *Swain* does not adequately protect an individual defendant's constitutional rights: "Since *every* defendant is entitled to equal protection of the laws and should therefore be free from the invidious discrimination of state officials, it is difficult to understand why several must suffer discrimination because of the prosecutor's use of peremptory challenges before any defendant can object." (*McCray v. New York* (1983), 461 U.S. 961, 964-65, 77 L. Ed. 2d 1322, 1324, 103 S. Ct. 2438, 2440 (Marshall and Brennan, JJ., dissenting from denial of *certiorari*).) Justice Nix of the Pennsylvania Supreme Court has put it another way: "Is justice to sit supinely by and be flaunted in case after case before a remedy is available? Is justice only obtainable after repeated injustices are demonstrated?" *Commonwealth v. Martin* (1975), 461 Pa. 289, 299, 336 A.2d 290, 295 (Nix, J., dissenting).

Recognizing these defects in the *Swain* standard, the

appellate court adopted a fair and workable approach for determining when peremptory challenges are used for illegitimate purposes. (106 Ill. App. 3d 1034, 1040.) When it reasonably appears to the trial court that the prosecution is systematically using peremptory challenges to exclude black jurors from the jury solely on the basis of race, the prosecution must come forward with evidence that its challenges were based on some legitimate, nonracial motive. This is the same test as that used by the courts of California (*People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890), Massachusetts (*Commonwealth v. Soares* (1979), 377 Mass. 461, 387 N.E.2d 499, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170), and New Mexico (*State v. Crespin* (1980), 94 N.M. 486, 612 P.2d 716) for regulating the use of peremptory challenges by State prosecutors, and courts in those States have had no apparent difficulty in applying it. The advantage of the *Payne* standard is that it forces the only people who know why the prosecution has used its peremptory challenges, that is the prosecutors themselves, to disclose that information.

Moreover the *Payne* standard does not unreasonably restrict the legitimate uses of peremptory challenges. All that is required is that the prosecutor identify a legitimate, nonfrivolous rationale for challenging the black jurors, and this is only required in cases where the defense has already established a *prima facie* case that the prosecution has been using peremptory challenges to exclude black people solely on the basis of race. (See, *e.g, Commonwealth v. Smith* (Mass. App. 1981), 428 N.E.2d 348, 353 n. 7.) If a constitutional violation can be avoided under the *Payne* standard without too much difficulty, one may reasonably ask why adopt it at all? The answer is that prosecuting attorneys are both lawyers and public officials, and when acting in these capacities, they have both a professional and a legal obligation to obey the law. By holding that prosecu-

tors cannot use peremptory challenges to exclude black persons from jury service solely on the basis of race, we would also require State's Attorneys to police the behavior of their assistants to ensure that they do not engage in unethical and illegal conduct. This is, after all, the level at which regulation of these unlawful practices will be most effective.

The record in this case adequately established a *prima facie* case that the prosecutor was using peremptory challenges to exclude black jurors solely on the basis of their race. As the majority points out, the record indicates that 10 black persons were called to the box during *voir dire*. Three were excluded for cause, leaving seven potential black jurors. The prosecution exercised six of the eight peremptory challenges that it used in this case to exclude all but one of the remaining black prospective jurors. To conclude, the prosecution used its peremptory challenges to exclude six out of seven available black jurors while it used them to exclude only two out of 23 available white jurors. These recitations alone indicate to me a deliberate plan, to which the defendant called the court's attention, to keep black persons from serving on the jury.

As the appellate court observed, the black jurors who were excluded are fairly heterogeneous, and "the single distinguishing characteristic that [they] shared is their race." (106 Ill. App. 3d 1034, 1045.) When the information obtained at *voir dire* concerning the excluded black jurors is compared with the information obtained about the selected jurors, no reason for their exclusion is apparent. (See the appendix to this dissent, 99 Ill. 2d at 159.) Although all of the black prospective jurors who were excluded were single, the People admitted in the appellate court that they did not notice this common characteristic until preparation of the case on appeal. See 106 Ill. App. 3d 1034, 1045.

It is important to note that this is not a case where ju-

rors have individually admitted in *voir dire* that their group membership would prevent them from fairly trying the issues before them. (Compare *Witherspoon v. Illinois* (1968), 391 U.S. 510, 520, 20 L. Ed. 2d 776, 784, 88 S. Ct. 1770, 1776 with *Lockett v. Ohio* (1978), 438 U.S. 586, 596-97, 57 L. Ed. 2d 973, 984-85, 98 S. Ct. 2954, 2960.) In this case the court specifically asked the prospective jurors whether their judgment would be influenced one way or another by the race of the defendant. Only one prospective juror said that he would be influenced by the defendant's race and he was promptly excused for cause.

Moreover, the defendant's *prima facie* case is not destroyed by the circumstance that one black person did serve on the jury that convicted him. "The evil lies in the *** wholesale exclusion of a large class *** in disregard of the high standards of jury selection." (*Thiel v. Southern Pacific Co.* (1946), 328 U.S. 217, 225, 90 L. Ed. 1181, 1187, 66 S. Ct. 984, 988.) The appellate court correctly held in this case that "[s]ystematic and affirmative racial exclusion of available black jurors by the State which results in only one black being seated as a juror is no less evil and no less constitutionally prohibited than the same procedure which results in the total exclusion of blacks." 106 Ill. App. 3d 1034, 1045.

Based on all these circumstances, I believe that the appellate court was correct when it concluded that:

> "[I]t should have reasonably appeared to the trial court that the prosecutor was using peremptory challenges to systematically exclude blacks from the jury solely because they were blacks. At that stage, the trial court should have required the prosecutor to demonstrate, by whatever facts and circumstances existed, that blacks were not systematically excluded solely because they were blacks. The failure of the trial court to impose such a requirement on the prosecutor at that stage was error, and the error is of such magnitude that the convictions must be reversed and the case remanded for a new trial." 106 Ill. App. 3d 1034, 1045-46.

## III

In Case After Case, Illinois Prosecutors Have Systematically
Used Peremptory Challenges to Exclude Prospective Black
Jurors in Violation of the Equal Protection Clause of
the Fourteenth Amendment.

The defendant is also entitled to a new trial because he
has established that the widespread misuse of peremptory
challenges by prosecutors in this State violates the equal
protection clause of the fourteenth amendment even as
construed by the Supreme Court in *Swain*. *Swain* did not
endorse the idea that the peremptory challenge is immune
from equal protection scrutiny when it is purposefully used
to facilitate or justify a system which results in denying
black persons "the same right and opportunity to partici-
pate in the administration of justice enjoyed by the white
population." (*Swain v. Alabama* (1965), 380 U.S. 202,
224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.) The major-
ity itself concedes that the defendant establishes a violation
of the equal protection clause if he can show that peremp-
tory challenges have been systematically and purposefully
used to exclude black people from jury service in case after
case. See, *e.g.*, 99 Ill. 2d at 138; *People v. Davis* (1983), 95
Ill. 2d 1, 16.

A shocking number of defendants in this State have al-
leged that prosecutors used peremptory challenges to ex-
clude black people from the juries that convicted them:

> *People v. Payne* (Nov. 23, 1983), No. 56907; *People v.
> Yates* (Oct. 25, 1983), No. 53482, slip op. at 25 (Simon, J.,
> dissenting); *People v. Cobb* (Oct. 4, 1983), Nos. 52944,
> 53038 cons.; *People v. Williams* (1983), 97 Ill. 2d 252;
> *People v. Bonilla* (1983), 117 Ill. App. 3d 1041; *People v.
> Gosberry* (1983), 93 Ill. 2d 544; *People v. Davis* (1983), 95
> Ill. 2d 1; *People v. Gilliard* (1983), 112 Ill. App. 3d 799;
> *People v. Newsome* (1982), 110 Ill. App. 3d 1043; *People v.
> Turner* (1982), 110 Ill. App. 3d 519; *People v. Teague*
> (1982), 108 Ill. App. 3d 891; *People v. Belton* (1982), 105
> Ill. App. 3d 10; *People v. Dixon* (1982), 105 Ill. App. 3d

340; *People v. Gaines* (1981), 88 Ill. 2d 342; *People v. Mims* (1981), 103 Ill. App. 3d 673; *People v. Lavinder* (1981), 102 Ill. App. 3d 662; *People v. Clearlee* (1981), 101 Ill. App. 3d 16; *People v. Vaughn* (1981), 100 Ill. App. 3d 1082; *People v. Tucker* (1981), 99 Ill. App. 3d 606; *People v. Allen* (1981), 96 Ill. App. 3d 871; *People v. Bracey* (1981), 93 Ill. App. 3d. 864; *People v. Smith* (1980), 91 Ill. App. 3d 523; *People v. Fleming* (1980), 91 Ill. App. 3d 99; *People v. Attaway* (1976), 41 Ill. App. 3d 837; *People v. Thornhill* (1975), 31 Ill. App. 3d. 779; *People v. King* (1973), 54 Ill. 2d 291; *People v. Powell* (1973), 53 Ill. 2d 465; *People v. Petty* (1972), 3 Ill. App. 3d 951; *People v. Fort* (1971), 133 Ill. App. 2d 473; *People v. Butler* (1970), 46 Ill. 2d 162; *People v. Cross* (1968), 40 Ill. 2d 85; *People v. Dukes* (1960), 19 Ill. 2d 532; *People v. Harris* (1959), 17 Ill. 2d 446.

In some of these cases the use of peremptory challenges to exclude prospective black jurors has been especially obvious. In *Yates*, a capital case, the prosecution used 13 of 16 peremptory challenges that it exercised to exclude black persons. In that case only one black person served on the jury, and he worked as an investigator for the Department of Public Aid and might well have been suspected by the State to be a person who would favor the prosecution. See *People v. Yates* (1983), 98 Ill. 2d 502, 545 (Simon J., dissenting).

In *Cobb*, another capital case, the defendant's first two trials ended in hung juries. In jury selection at those trials the prosecution cumulatively exercised 28 out of 41 peremptory challenges against prospective black jurors and succeeded in limiting participation by black persons on each jury to one. At the third trial the prosecution used 8 out of 11 peremptory challenges against black people and finally succeeded in obtaining a conviction by an all-white jury. We reversed and remanded this conviction on other grounds, and it will be informative to see whether at the fourth trial the prosecution will again attempt to obtain a conviction by an all-white, or nearly all-white jury.

In view of the obvious misuse of peremptory challenges in cases like *Yates* and *Cobb* and the tremendous number of cases from this State raising the issue, I believe that the defendant has established that prosecutors in Illinois have been purposely and systematically using peremptory challenges in case after case to exclude black persons from juries in a State having one of the largest populations of black people in the nation. The appellate court recently noted:

"[I]t is an open secret that prosecutors in Chicago and elsewhere have been using their peremptory challenges to systematically eliminate all blacks, or all but token blacks, from juries in criminal cases where the defendants are blacks. (See Waltz, *Now It's Harder for Lawyers to Pick Biased Jury*, Chicago Sun-Times, July 13, 1982, at 30, col. 1.) Since all others can see and understand this, how can we properly shut our minds to it? [Citation.] There comes a point when we should not be ignorant as judges of what we know as [human beings]. *Watts v. Indiana* (1949), 338 U.S. 49, 52, 93 L. Ed. 1801, 1805, 69 S. Ct. 1347, 1349." *People v. Gilliard* (1983), 112 Ill. App. 3d 799, 807.

If the majority finds the record in this case inadequate to establish a constitutional violation under *Swain*, at the very least we should enter an order under our supervisory authority requiring the circuit court clerks in this State to adopt a system for recording prosecutors' use of peremptory challenges against black persons and the extent of black participation on juries. Only in this way can criminal defendants in this State acquire the information about the use of peremptory challenges in case after case that the majority insists is necessary under *Swain* to establish a violation of the constitution. Without this assistance, any effort by defendants to prove what is happening is at the worst hopeless and at the best will take many years to accomplish.

## IV
### The Use of Peremptory Challenges to Exclude Black
### People From Serving On Juries Violates the
### Illinois Constitution.

Even if the sixth and fourteenth amendments to the Federal Constitution permit State prosecutors to use peremptory challenges to exclude black people from jury service solely on the basis of their race, something I believe they do not, we, as judges of the supreme court of this State, have an independent obligation to apply our State constitution to the defendant's claim. In fulfilling that obligation we are not bound by the precedent of the United States Supreme Court. Indeed in many instances considerations of federalism, which do not influence us, may counsel the Supreme Court against the broad expansion of the individual liberties guaranteed by the Federal Constitution. See *Fay v. New York* (1947), 332 U.S. 261, 287, 91 L. Ed. 2043, 2060, 67 S. Ct. 1613, 1627.

I interpret article I, section 13, of our 1970 Constitution to guarantee to each criminal defendant a trial by an impartial jury selected from a fair cross section of the community in which he is tried. (Ill. Const. 1970, art. I, sec. 13.) Our constitution also recognizes the equality of all citizens, regardless of race, as a fundamental public policy. (Ill. Const. 1970, art. I, sec. 2.) Are judges as well as prosecutors not unfaithful to these important and constructive moral principles when we permit the State to use peremptory challenges to exclude black persons from jury service solely on the basis of race?

As explained above, implicit in the guarantee of a jury trial is the principle that the qualifications of jurors will be determined on an individual and not on a group basis. Although this does not guarantee a defendant that his jury will proportionately reflect the racial makeup of the community, it does guarantee him that no human hand will de-

liberately interfere with the jury selection process so as to prevent the participation of particular racial groups on his jury. The prosecution's use of peremptory challenges in this case violates our State constitution. The prosecution may use peremptory challenges for any legitimate reason under our constitution, but purposeful discrimination against, or exclusion of, black persons cannot be a legitimate purpose. The obligation to be fair to all of the citizens he represents, and not to discriminate, is as important a function and responsibility of the public prosecutor as is the seeking of convictions. *Cf. People v. Cornille* (1983), 95 Ill. 2d 497, 513-14.

At least three States have held that the use of peremptory challenges to exclude prospective jurors solely on the basis of race violates provisions of their State constitutions. (*State v. Crespin* (1980), 94 N.M. 486, 612 P.2d 716; *Commonwealth v. Soares* (1979), 377 Mass. 471, 387 N.E.2d 499, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170; *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890.) Several members of the United States Supreme Court have stated that "further consideration of the substantive and procedural ramifications of the [peremptory challenge] problem by [State] courts will enable us to deal with the issue more wisely at a later date." (*McCray v. New York* (1983), 461 U.S. 961, 962, 77 L. Ed. 2d 1322, 1322, 103 S. Ct. 2438, 2438 (opinion of Stevens, J., joined by Blackmun and Powell, JJ., on denial of *certiorari*).) Illinois courts could play a constructive role in developing procedures to limit the misuse of peremptory challenges, and I regret that the majority has not considered the applicability of our State constitution to this question. Whether or not the defendant has specifically placed reliance on his rights under our State constitution in this case, the issue before us is one of such magnitude in the administration of justice that, in our role as guardians of the judicial process with responsibility to see that justice prevails, it is

our duty to examine whether our State constitution is offended by the practices which are complained of. Moreover, when the defendant specifically raises an issue under the Bill of Rights in the Federal Constitution, I believe that we should consider him to have raised the same issue under the broadly analogous provisions of our State constitution, especially when we would construe the State guarantees as more protective of the defendant's individual rights than the comparable Federal ones.

V

To Maintain Public Confidence in the Fairness and Impartiality
of the Jury System We Must Grant a New Trial in This Case
Under Our Supervisory Jurisdiction. ·

Even more troubling is the majority's reluctance to consider limiting the misuse of peremptory challenges under our supervisory jurisdiction over the system of justice in this State. (*Cf. Ballard v. United States* (1946), 329 U.S. 187, 91 L. Ed. 181, 67 S. Ct. 261 (granting new trial under supervisory jurisdiction over Federal courts where, pursuant to State law, women were excluded from a jury venire unless they volunteered); see also *United States v. McDaniels* (E.D. La. 1974), 379 F. Supp. 1243, 1244 (granting a new trial under Federal Rule of Criminal Procedure 33 (Fed. R. Crim. P. 33) in the "interest of justice" where prosecutors used peremptory challenges to remove six of seven black persons from venire).) The cost of not doing so is substantial. The majority's decisions in this case, *Williams,* and *Davis* will embolden prosecutors to increase their use of peremptory challenges to exclude black people from jury service. These decisions, as a group, give judicial sanction to racially discriminatory activity in a way that is likely to undermine the jury system and pervert its goal of seeking the truth. The majority's implicit endorsement of these practices will diminish the confidence that the people of this State must have in the fairness and impartiality of

the trial by jury, and it will ultimately discourage respect for the law.

The defendant is not the only person affected by this pernicious practice—"there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." (*Ballard v. United States* (1946), 329 U.S. 187, 195, 91 L. Ed. 181, 187, 67 S. Ct. 261, 265.) Moreover, when lawyers use peremptory challenges to exclude prospective black jurors from serving on a jury, they deny those persons the opportunity to participate in the administration of the criminal justice system through the privilege of jury service. In many cases, I suspect, lawyers are using peremptory challenges to exclude black jurors as a group because they presume all black people will decide cases based upon racial affinity with the defendant or the victim in the case rather than upon their obligations as citizens and as impartial jurors. This kind of stereotype has been justly condemned under the equal protection clause. (See *Strauder v. West Virginia* (1879), 100 U. S. 303, 25 L. Ed. 664; *Frontiero v. Richardson* (1973), 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (opinion of Brennan, J., joined by Douglas, White, and Marshall, JJ.).) Whether exercised by prosecutors or by private attorneys, discrimination based on race, sex, religious creed, or national origin is contrary to the principles of fairness and justice which guide us in the exercise of our supervisory jurisdiction.

The idea that a citizen shall have the right to have his guilt or innocence determined by fellow citizens and not by the government is the most cherished democratic component of our common law system of justice. We must do everything in our power to protect this hard won right to trial by jury against practices that would destroy it. "It follows that we cannot sanction the method by which the jury panel was formed in this case. *** To reassert [the high standards of jury selection], to guard against the subtle un-

dermining of the jury system, requires a new trial by a jury drawn from a panel properly and fairly chosen." *Thiel v. Southern Pacific Co.* (1946), 328 U.S. 217, 225, 90 L. Ed. 1181, 1187, 66 S. Ct. 984, 988.

APPENDIX

BACKGROUNDS OF BLACK PROSPECTIVE JURORS EXCLUDED BY PROSECUTOR'S PEREMPTORY CHALLENGE (6)

1. E.P., a woman, has been employed for six years as a pricer for a distributing company. She is single and lives alone. The son of a friend is a police officer, but she last saw him six months ago and he never discusses his work with her. She was rape victim 29 years ago; rapist was discovered and prosecuted; she testified at trial.

2. B.W., a man, is single and unemployed. He last worked four months ago as a machinist. He is 20 years old and out of school for three years. His mother works as a secretary for the Department of Human Services. He has two brothers, the elder is unemployed, the younger is in school. He was a plaintiff in a lawsuit to recover money from his employer for the loss of a finger and the case was settled out of court.

3. Miss E., a woman, teaches mentally handicapped students for Chicago Board of Education. She is single and has lived on South Vernon Ave. for over 20 years. She has a younger brother, unmarried, who is a claims adjuster for an insurance company. Her father works for the post office and her mother works in the home. In 1974 her car was vandalized. She reported the incident to police and although the culprit was never found, she was satisfied with the police work. She was a juror in 1976 in a civil case.

4. Miss J., a woman, has worked for two weeks at a department store; before that she was a clerk in a hosiery store. She is 21, single and lives with parents. Her stepfather works as a driver for a manufacturing company and

her mother is a nurse's aide for the Board of Health. She has two younger sisters, both in school. While working at the hosiery shop, the shop was robbed and in the robbery she was assaulted with a knife. Police caught the perpetrators and she testified at their trial.

5. N.Y., a woman, has been a receiving clerk for 16 years. She has been divorced for one year, after 30 years of marriage. Her former husband was a janitor. She has a 17-year-old in high school and a 20-year-old in electronics school.

6. F.A., a man, has been employed by the City of Chicago, Department of Human Services, for one and a half years. Before that he was a packer at Chicago Rotoprint Co. He is single and lives with his parents. His father is a postal worker; his mother works in the home. He has four brothers, five sisters, none in law enforcement. He has lived on South Throop Street for 10 years. He was in the service briefly but had an eye impairment and was discharged.

### BACKGROUNDS OF JURORS SELECTED AT DEFENDANT'S TRIAL (12)

1. M.H., a white woman, has worked for six years at the Institute for Psychological Analysis. Before that she was a cook at a tavern. She is married and has nine children, none of whom work in law enforcement or medicine. Her husband is retired but was a crane operator.

2. P.C., a white woman, has been married for six months and has no children. Her husband works as a forklifter at the same steel mill where her father is a foreman. Her mother works part time as a weight watcher lecturer. Her parents live in Calumet Park and she lived there for 20 years before her marriage. She has three sisters, a student, a nurse and a beautician.

3. J.C., a white woman, is a clerk at Amoco Motor Club. Her husband has been a sales representative for Ca-

nadian Pacific for eight years. Before that he was a sales representative for Montgomery Ward. She has twins, 12 years old. Her husband's sister is married to a policeman and she sees him once every two weeks but he never talks about work.

4. C.B., a white woman, has been a credit correspondent for an insurance company for five years. She has been married for 12 years. Her husband is a machinist. She has one child, 10 years old. She is a native of the Chicago area, and has lived for the last 12 years in Forest Park after moving out of the city.

5. J.R., a white man, has been an auto mechanic for the last eight years. He is married, his wife works in the home. They have one child, 11 months old. He has lived in Buffalo Grove for six years. His cousin is a Chicago police officer but he sees him infrequently.

6. S.R., a white man, is retired. Before that he worked for U.S. Steel at the South Works for 34 years. He is married and his wife works as a sales clerk two days a week. They have three daughters: a divorced teletype operator, 41; a married schoolteacher, 36; and a single custom designer, 31. He was a juror in a personal injury case in 1975.

7. J.D., a white man, is employed at Illinois Bell as an executive in long-range corporate planning. His wife is a hospital nurse who works on patients as they come out of surgery. They have three children, the oldest is 13 years old. They have lived in Evanston for 15 years, before that in Rogers Park on the north side of Chicago. His sister's husband is a Chicago police officer, but he sees him only twice a year. His parents' house has been burglarized twice, once when he was living there. Neither case was ever solved.

8. T.D., a white man, has been a salesman for one and one-half years with a chemical company. He is 26, single, and lives with his parents. His father is an accountant with

an insurance company. He has five brothers, none in law enforcement.

9. R.V., a white man, has worked at Motorola for two and one-half years. He is single and has lived with his parents in Elmwood Park for 17 years. His father works at a fasteners company and his mother works in sporting goods. He has one married sister. He has a cousin who is a police officer, but he only sees him once every two years or so.

10. B.C., a white woman, is a physical education teacher in Palatine. She has been married for four years and her husband is a parts clerk at 3M Co. She has lived in Franklin Park for 14 years. A neighbor of her mother-in-law is a police officer, but she rarely sees him.

11. J.G., a white woman, has been a C.P.A. with a national accounting firm for four years, before that she was in school. She is single and lives alone. Her parents live in the Chicago area. Her father is a corporate comptroller and her mother works in the home. She has two older brothers, one a C.P.A. with the same accounting firm, and one with W. R. Grace in New York. She knows a lawyer in general practice, but last saw him four months ago. Her father was robbed six years ago and the robbery was never solved.

12. J.W., a black woman, has been a registered nurse for one year, before that she was a licensed practical nurse for 20 years. She is married, and her husband is a foreman for the University of Chicago printing department. They have lived in Park Forest for six years, before that on the south side of Chicago. They have two children; a 15-year-old daughter in high school, and an 18-year-old son in the Air Force overseas. Eight years ago she was in a car accident. The occupant of the other car sued her, but the case was settled and she was never called to testify.